# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1699

———————

United States of America,

              Appellee,

v.

Jody Ray Miller,

              Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

———————

Submitted:  December 7, 2006
Filed:  February 23, 2007

———————

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Jody Ray Miller, a supervisor at the Craighead County Detention Facility in Craighead County, Arkansas (the facility), was convicted of depriving two prisoners, Climmie Jones and Terry O'Neil, of their Eighth Amendment right to be free from cruel and unusual punishment, in violation of 18 U.S.C. § 242.  The district court[1] sentenced him to 78 months' imprisonment.  Miller on appeal argues that there was

———————

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

insufficient evidence to support the conviction pertaining to Jones and claims error in the admission of certain evidence.  We affirm.

## I.

On March 29, 2004,  jailer Arlen Whitley brought Jones, a prisoner at the facility, to the detoxification (detox) room so that Jones – who was acting in a disruptive manner – could "cool off."  Whitley, who was joined in the detox room by other jailers (including Miller), pinned Jones to a wall and (paraphrasing Whitley's exact words) "read him the riot act."  After this admonishment, Whitley let Jones go and began to remove the handcuffs.  As the handcuffs were being removed, Miller struck Jones in the head with a closed fist, causing Jones to fall to the ground.  While Jones was lying on the ground, one of the jailers finished removing Jones's handcuffs.  Miller, who was wearing boots, then began kicking and stomping on Jones in the area of his upper body.[2]  Later, when Miller was leaving the detox room, he called Jones a "nigger."  Miller told Whitley to write a "good report," which Whitley interpreted to mean a report that did not mention Miller's assault on Jones.  Whitley obliged, but eventually told the jail administrator and the sheriff what had happened.

Jailers who were present during the incident testified that there was no legitimate law enforcement reason for Miller to strike Jones, that Whitley had the situation under control, and that Jones had not been acting in a threatening or physically combative manner.  Jones's injuries from this incident consisted of a "busted" and bloodied lip as well as a hurt leg.  After his encounter with Miller, Jones could be overheard crying in the detox room.  Jones requested medical attention for his injuries.

On April 1, 2004, Terry O'Neil, who had been involved in an altercation with police, was brought to the facility and taken in handcuffs to the detox room.  Although

_____

[2]Jones was kicked by another jailer as well.

he was cursing en route, he was not physically resisting and was not acting in a physically threatening manner. O'Neil was ordered on his knees so that jailers could remove his handcuffs. Because the jailers were having difficulty with the handcuffs, O'Neil was then told to lie down on his stomach. When O'Neil got on his stomach, Miller, who was again wearing boots, began kicking O'Neil in the head and the upper body area. Another jailer kicked O'Neil as well, and a third later applied a taser to O'Neil's leg. While he was kicking O'Neil, Miller stated, "I bet you won't ever fuck with the police anymore" and "I bet you'll never hit a cop again." At the time of the assault, O'Neil was handcuffed and was not physically resisting.

Jailers who had witnessed the incident testified that there was no legitimate law enforcement reason for Miller's actions. O'Neil's injuries consisted of a bruised and swollen left eye and a reddish-purple face. He was taken to the emergency room for treatment. Miller later told the jailers who were present during the assault on Jones to write "good" reports. Several of the jailers wrote false reports which stated that O'Neil had been acting in a combative manner and had been resisting the jailers.

## II.

The Eighth Amendment prohibition against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by their jailers. Whitley v. Albers, 475 U.S. 312, 319-20 (1986); Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006) (citing Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002)). When jail officials are alleged to have used excessive force against a prisoner, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994) (citations omitted).

Miller argues that there was insufficient evidence to support his conviction for inflicting cruel and unusual punishment upon Jones because Jones's injuries were not serious enough to warrant the inference that Miller had acted maliciously or sadistically. In other words, Miller contends that if he had acted maliciously or sadistically, Jones's injuries would have been much worse. We reject this argument.

We review the sufficiency of the evidence "de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003) (citation omitted). Here, a reasonable jury could have concluded that punching Jones when there was no legitimate reason to do so and then kicking him and stomping on him while he was lying on the ground was a course of action intended to injure Jones "without just cause or reason," and was therefore malicious. Howard, 21 F.3d at 872. Similarly, the jury could have reasonably determined that Miller's unjustified attack constituted "excessive cruelty," and was therefore sadistic. Id. The fact that Miller may have been able to inflict even greater injuries upon Jones does not make the attack any less malicious or sadistic. Cf. id. at 872-73 (concluding that the Eighth Amendment proscribes the use of excessive force against prisoners, even if the resulting "injury is not of great significance"); McLaurin v. Prater, 30 F.3d 982, 984 (8th Cir. 1994) (stating that pain is a "sufficient injury to allow for recovery for an Eighth Amendment violation"). In sum, Miller's sufficiency claim lacks merit.

Miller also raises two evidentiary claims of error on appeal. First, he contends that O'Neil's medical records were improperly admitted into evidence under the medical treatment or diagnosis exception to the hearsay rule because the records contained statements identifying Miller as one of O'Neil's assailants and thus fell outside the proper scope of the exception. Cf. United States v. Renville, 779 F.2d 430, 436-37 (8th Cir. 1985) (acknowledging that, although there is an exception to the hearsay rule for statements that are "reasonably pertinent" to medical treatment or diagnosis, statements identifying the individual responsible for the declarant's injuries

do not typically fall under this exception). This claim fails, however, because, contrary to Miller's assertions, these records do not identify Miller, or anyone else, as the individual responsible for O'Neil's injuries.[3]

Miller's second evidentiary claim concerns the admission of statements made by jailer Chris McFarlin. Jailer Kaye Harris testified that a crying and upset McFarlin admitted to her that he had filed a false report in connection with the O'Neil incident. Harris responded that McFarlin should find a computer, finish his report, and tell the truth. Miller contends that, although McFarlin was crying when he made his statements to Harris, his tears alone do not suffice to render the statements excited utterances. This may true, but McFarlin's statements were not admitted as excited utterances. They were instead offered to explain Harris's subsequent actions. Miller does not allege, nor can we discern, any error in the admission of these statements for that purpose. The jury was given an appropriate limiting instruction, and the statements were, in any case, cumulative of McFarlin's own testimony that he had falsified a report. Accordingly, we find no error.

The convictions are affirmed.

_____

---

[3]At oral argument, Miller contended that even if the medical records did not explicitly state that Miller was the source of O'Neil's injuries, one could draw this inference from the records in light of other facts in the case. This argument is unavailing. Statements concerning identity or fault are generally, though not always, considered insufficiently reliable to fall under the medical exception to the hearsay rule because they "seldom are made to promote effective treatment" and "physicians rarely have any reason to rely on statements of identity in treating or diagnosing a patient." Renville, 779 F.2d at 436. We doubt that a statement that is otherwise admissible as a statement made for the purposes of treatment or diagnosis is rendered inadmissible merely because it may also indirectly and incidentally suggest the person responsible for the declarant's injuries.