# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2022
_____

Chariell Ali Glaze,

*Plaintiff - Appellee,*

v.

Karl Byrd, Sheriff, Faulkner County; Bobby Brown, Major, Faulkner County
Sheriff's Office; John Randall, Captain, Faulkner County Sheriff's Office,

*Defendant*s,

Gary Andrews, Lt., Faulkner County Sheriff's Office; Demontrel L. Childs,

*Defendants - Appellants.*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 17, 2013
Filed: July 19, 2013
_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

While detained pending trial at the Faulkner County Detention Center in
Arkansas, Chariell Glaze was attacked by three fellow inmates. He brought this

action, alleging that Demontrel Childs, a correctional officer at the jail, and Gary Andrews, a lieutenant, violated his constitutional rights by failing to protect him from the attack. The district court denied the defendants' motion for summary judgment based on qualified immunity, and the defendants appeal. We affirm the denial of qualified immunity to Childs, reverse as to Andrews, and remand for further proceedings.

I.

Because we are reviewing the denial of the defendants' motion for summary judgment, we describe the facts in the light most favorable to Glaze. On the morning of March 5, 2010, for reasons that do not appear in the record, jail officials removed Glaze from his cell and placed him in administrative segregation. An officer returned Glaze to his cell later that night. When Glaze reentered his cell, he was attacked by fellow inmates, including one Marcus Amos.

The key evidence in this appeal is the deposition testimony of Bradley Boyce, one of Glaze's cellmates. Boyce testified that he had two conversations with correctional officer Childs on the day of the attack. The first conversation occurred shortly after Glaze left the cell for administrative segregation. Boyce told Childs that "you all just took Mr. Glaze out of here and there are people in here talking about hurting him." Boyce warned Childs that "if you bring [Glaze] back in here there are certain inmates in here talking about hurting him." According to Glaze, Childs said that he would "talk to the lieutenant and see what can be done."

Later that afternoon, while Glaze was still in administrative segregation, Boyce asked Childs whether he had spoken to the lieutenant. According to Boyce, Childs responded that he "talked to the lieutenant and the lieutenant said he couldn't do anything about it," but Boyce also said that "knowing that they have done moves like that before and moved people around on those grounds, either [Childs] is lying or he

didn't give the lieutenant all of the information." J.A. 168. Boyce testified that the lieutenant to whom Childs referred was Lieutenant Andrews.

Jail officials took no action in response to Boyce's warning. At around 10:50 that night, an officer returned Glaze to his cell. As Boyce had predicted, Glaze was attacked by three inmates, who bloodied Glaze's face. Glaze was transported to a hospital emergency room, where he received six stitches around his left eye.

Glaze brought this lawsuit, alleging that five jail officials violated his constitutional rights by failing to protect him from the attack. All five moved for summary judgment, arguing that they were entitled to qualified immunity. The district court, adopting a recommendation of a magistrate judge, dismissed three officials but not Childs and Andrews.

As to Childs, the district court determined that a reasonable jury could find that he failed to inform Andrews of the risk of danger to Glaze if he were returned to his cell. On that basis, the court ruled that a jury could find that Childs was deliberately indifferent to Glaze's safety, and that he violated a clearly established constitutional right.

The district court also concluded that a reasonable jury could find that Andrews failed to respond properly to a warning about the threats against Glaze. The court noted that Andrews might have known that Glaze was in danger before Boyce's conversations with Childs, because one of the attackers—Marcus Amos—was removed from Glaze's cell three or four days before the attack. The district court also reasoned that although Andrews testified that he did not know of problems between Glaze and Amos prior to March 6, 2010, he did not say whether he was notified by Officer Childs about the threat to Glaze on the morning of March 6. The district court believed (erroneously) that the attack occurred on March 6 rather than March 5, so the court thought the potential for notice to Andrews on the morning of March 6 was

-3-

significant. The court did not rely on Boyce's testimony about his second conversation with Childs. The parties disputed whether this evidence was hearsay, and the court deferred a ruling, if necessary, until trial.

## II.

Childs and Andrews appeal the denial of qualified immunity. We review the district court's denial of qualified immunity *de novo*, and we view the evidence in the light most favorable to Glaze. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011). An official is entitled to qualified immunity unless the facts alleged establish a violation of a constitutional or statutory right, and that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

A jail official violates the Due Process Clause of the Fourteenth Amendment, and may be liable under 42 U.S.C. § 1983, when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee. *See Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). A failure-to-protect claim has two elements. First, "the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the inmate must show that the official knew of and disregarded the risk to the inmate's safety. *Id.* at 837.

Neither defendant disputes that Glaze was detained under conditions that posed a substantial risk of harm. Childs and Andrews contend, however, that the facts alleged fail to establish a constitutional violation, because there is no evidence that either of them knew of the danger to Glaze.

A.

Childs argues that Boyce's warning was too vague to communicate the existence of a substantial risk of serious harm, and that Boyce did not identify the would-be assailant. We have recognized that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (internal quotation omitted). But we believe a jury reasonably could conclude that Childs appreciated the risk to Glaze. After Boyce told Childs that Glaze was in danger, Childs responded that he would "talk to the lieutenant and see what can be done." A reasonable jury could interpret Childs's response to mean that he perceived a serious risk to Glaze's safety, because he regarded the threat as serious enough to warrant telling his lieutenant. Insofar as Childs relies on Boyce's failure to identify the would-be assailant, his argument has been rejected by the Supreme Court. A jail official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843.

Childs also asserts that there is no evidence that he failed to tell Andrews about his conversation with Boyce, because "the submitted evidence is that [he] informed his lieutenant," but this is not a matter that we can review in an interlocutory appeal. Our jurisdiction extends only to purely legal issues. *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011). A district court's determination about "whether the evidence could support a finding that particular conduct occurred" is not immediately appealable. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). Here, the record includes no testimony or affidavit from Childs about the events of March 5. Boyce testified that he thought Childs was lying or exaggerating when he claimed to have informed Andrews of Boyce's warning, and the district court determined that a jury could find

that Childs never told Andrews about the warning. We must take that as a given for purposes of an interlocutory appeal based on qualified immunity.

Assuming that Childs failed to tell Andrews about the threat, there is sufficient evidence on the present limited record from which a jury could infer that Childs acted with the requisite mental state for a constitutional violation. Perhaps Childs consciously chose not to bother the lieutenant, or maybe Childs decided that he did not care what happened to Glaze. The evidence at this stage does not foreclose either possibility. So if a jury concluded that Childs was aware of a substantial risk of serious harm to Glaze, and that he failed to notify Andrews, then it could further conclude that Childs was deliberately indifferent to Glaze's safety. Such deliberate indifference would violate clearly established law that sets forth a jail official's duty, under certain circumstances, to protect inmates from substantial risks of serious harm. *See, e.g.*, *Farmer*, 511 U.S. at 828; *Kahle*, 477 F.3d 550. On this record, the district court properly denied qualified immunity to Childs.

B.

Andrews contends that no admissible evidence demonstrates that he knew of any threat to Glaze, so he could not have known that Glaze faced a substantial risk of serious harm. In response, Glaze abandons the district court's notion that Andrews might have learned of trouble between Glaze and Amos on the morning of the attack; Glaze admits that the attack occurred on March 5. Glaze does suggest that Andrews knew of a serious risk to Glaze because Amos had been removed from the cell that he shared with Glaze a few days earlier. Glaze concedes, however, that the only reason Amos did not want to be housed with Glaze was that he had "bad gas," so even if Andrews had known about Amos's move, no reasonable jury could find that Andrews inferred from the move that Glaze was in danger.

-6-

To show that Andrews knew of the threat, Glaze relies on Boyce's second conversation with Childs. He cites Childs's statement to Boyce that Childs "talked to the lieutenant and the lieutenant said he couldn't do anything about it." Andrews responds that the second conversation is inadmissible hearsay that cannot be used to defeat summary judgment. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010). This disagreement raises a purely legal issue under the rules of evidence.

Childs's second conversation with Boyce contains two separate statements for evidentiary purposes: Childs's statement that he "talked to the lieutenant," and Andrews's response that "he couldn't do anything about it." We conclude that both statements are inadmissible.

The first statement—that Childs "talked to the lieutenant"—is the more important of the two. It would show that Childs informed Andrews of the threat to Glaze. But this assertion is an out-of-court statement by Childs offered to prove the truth of the matter asserted—i.e., that Childs spoke with Andrews. As such, it is hearsay. Fed. R. Evid. 801(c). Glaze contends that the statement is not hearsay because it is an admission by a party-opponent, *see* Fed. R. Evid. 801(d)(2), but the statement by Childs is offered against Andrews, not against Childs, so it is not admissible as an admission. Glaze also cites Federal Rule of Evidence 803(3), but the statement does not concern Childs's "then-existing state of mind"; it concerns what Childs supposedly told Andrews. Because no hearsay exception applies to the first statement, it is inadmissible.

The second statement—Childs's report that Andrews said "he couldn't do anything about it"—is also inadmissible. This statement is hearsay within hearsay. Boyce testified about a statement by Childs that reported a statement by Andrews. This type of evidence is admissible only "if each part of the combined statements conforms with an exception to the rule [against hearsay]." Fed. R. Evid. 805.

-7-

Although Andrews's statement would be admissible against him as an admission if Childs so testified, there is no exception allowing admission of Boyce's statement about what Childs told him.

There is no admissible evidence to establish that Andrews knew about a substantial risk to Glaze's safety. Andrews is thus entitled to qualified immunity.

\*       \*       \*

For the foregoing reasons, we affirm the denial of qualified immunity to Childs, reverse the denial of qualified immunity to Andrews, and remand for further proceedings.

_____