# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3356

_____

Daniel J. Scott

*Plaintiff - Appellee*

v.

Mary Benson, ARNP

*Defendant - Appellant*

Iowa Civil Commitment Unit for Sex Offenders; Dr. Jason Smith, Director

*Defendant*s

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: April 10, 2013
Filed: February 4, 2014

_____

Before LOKEN and GRUENDER, Circuit Judges, and PHILLIPS,[1] District Judge.

_____

GRUENDER, Circuit Judge.

_____

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, sitting by designation.

Daniel Scott filed this 42 U.S.C. § 1983 action alleging that Mary Benson provided him constitutionally deficient medical care. The district court denied Benson's motion for summary judgment on the basis of qualified immunity. We conclude that the district court applied the wrong constitutional standard and, therefore, vacate the denial of summary judgment and remand this case for consideration under the correct constitutional standard.

## I. Background

Scott is an involuntarily committed patient at the Iowa Civil Commitment Unit for Sexual Offenders ("CCUSO"). Benson is an Advanced Registered Nurse Practitioner at CCUSO who had primary responsibility for treating Scott's medical needs during the relevant time period.

The relevant facts, almost all of which are disputed, occurred in August and September 2010. In his *pro se* complaint, Scott alleges that on August 8, 2010 he "found 2 hard boils one on the right cheek of [his] butt, and the second was found under the left cheek of [his] butt," which prompted Scott to file a medical request for antibiotics. It appears that Benson did not see Scott at this time. By August 16, the boils had increased in size, and Scott could squeeze pus from them. At this time, Benson examined both areas, said they were "fine," instructed Scott to keep the areas clean and to let them drain, and provided Scott with ABD pads. One week later, on August 23, Scott returned to Benson because the boils were still draining and had begun to smell. Benson told Scott that nothing was wrong, that the boils were healing, and that Scott should give them time to heal. Scott's infection, however, continued to spread and the odor became "really bad." Scott brought these concerns to Benson, who "belittled" him by saying, "There is nothing wrong with you, [you're] just looking for attention, stop it right now[.]" According to Scott, he then asked other members of CCUSO's staff to examine the infected areas. Based on these staff members' concerns, Benson saw Scott yet again. Although Benson told Scott nothing

was wrong with him at this time, she ordered complete bed rest for Scott and told him she would order medication for him. Several days later, on September 7, Scott returned to Benson, who saw that gangrene had developed in the infected areas. Benson then sent Scott to the hospital.

In response to these allegations, Benson filed a motion for summary judgment along with a supporting affidavit. Scott then filed an affidavit in which he altered the timing and the substance of several of the allegations in his *pro se* complaint. According to Scott's affidavit, Scott first went to Benson on August 2, not August 8, because he "could feel infections by a lump in my left thigh." Benson examined Scott's thigh and told him he did not need antibiotics. Scott returned to Benson with the same concern on August 10, 2010, and according to Scott's affidavit, Benson refused to examine his leg. On August 17, Scott again sought treatment from Benson. Although Scott could squeeze pus from the infected area, Benson told him "she didn't see anything" and denied Scott's request for antibiotics. On August 25, Scott again requested care and antibiotics from Benson. According to Scott, Benson refused his request for antibiotics and yelled, "There's nothing wrong with you, all you are wanting is attention—stop it now." Scott returned to Benson again on September 4, 2010. Despite Scott's concerns, Benson refused to examine Scott or to prescribe antibiotics, although Benson ordered bed rest for Scott and placed him on a liquid diet. On September 7, Scott again sought treatment from Benson, who smelled an infection and sent Scott to the hospital.

Benson's account of the relevant events differs substantially from Scott's. Although Benson saw Scott on August 2, 2010, her treatment notes do not indicate that Scott complained about a lump on his thigh. Nor do her treatment notes indicate that Scott sought treatment on August 10. On August 16, Benson reports that she saw Scott, who reported "boils on his bottom side." According to Benson, she viewed the area, finding two "superficial scratches, not boils," for which she prescribed the antibiotic Cipro. This account is corroborated by Benson's treatment notes and

CCUSO's medication disbursement records. On August 27, Benson saw Scott again and observed "a pinpoint hole that exuded purulent drainage." According to Benson, she prescribed "Augmentin, a powerful antibiotic" for Scott, a claim that is supported by Benson's treatment notes and CCUSO's medication disbursement records. Benson further alleges that, although the medical clinic was closed on Saturday, September 4, she provided a telephone consultation to Scott on that date and determined that the symptoms presented did not require a personal evaluation. Three days later, Benson observed a "foul odor coming from Mr. Scott's perianal area." Benson conferred with CCUSO's medical director and sent Scott to the hospital.

Both parties agree that Scott underwent two surgeries to remove the diseased tissue upon reaching the hospital. While at the hospital, Scott also suffered a heart attack. Scott was able to return to CCUSO a short time later, though his leg remained extremely swollen. On or about October 16, 2010, CCUSO officials found Scott unresponsive and sent him back to the hospital. He was transferred to another hospital, where doctors diagnosed him with sepsis. On October 27, the lower portion of Scott's leg was amputated.

Based on this record, Benson moved for summary judgment on the basis of qualified immunity. The district court denied Benson's motion for summary judgment. Benson now appeals.

## II. Discussion

"Ordinarily, we have no jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision." *Krout v. Goemmer*, 583 F.3d 557, 563-64 (8th Cir. 2009). But pursuant to the collateral order doctrine, we possess limited authority to hear an interlocutory appeal from the denial of qualified immunity. *Johnson v. Jones*, 515 U.S. 304, 311-12 (1995). We review the district court's denial of summary judgment based on

qualified immunity *de novo*, viewing the record in the light most favorable to Scott and drawing all reasonable inferences in his favor. *See Krout*, 583 F.3d at 564. To determine whether qualified immunity applies, we ask "(1) whether the facts alleged or shown, construed in the light most favorable to [Scott], establish a violation of a constitutional or statutory right," and "(2) whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [her] actions were unlawful." *Id.* Unless we answer these questions in the affirmative, Benson is entitled to qualified immunity. *See id.*

With respect to the first of these questions, Scott alleges that Benson provided him constitutionally deficient medical care. As a resident of CCUSO, Scott was a civilly committed individual, meaning any right to medical care arises under the Due Process Clause of the Fourteenth Amendment. *See Nelson v. Shuffman*, 603 F.3d 439, 442-43, 446 n.3 (8th Cir. 2010). Both parties argued to the district court that the deliberate indifference standard from the Eighth Amendment should govern Scott's Fourteenth Amendment claim. Relying on a non-binding case, *McDonald v. Eilers*, Civ. No. 88-2751, 1988 WL 131360, at *2 (E.D. Pa. Dec. 7, 1988), the district court instead analyzed Scott's claim under the professional judgment standard from *Youngberg v. Romeo*, 457 U.S. 307 (1982). Under this standard, "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. However, the Supreme Court thereafter said *Youngberg* "did not deal with decisions to administer or withhold medical treatment." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 280 (1990). Instead, where a patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment. *Senty-Haugen v. Goodno*, 462 F.3d 876, 889-90 (8th Cir. 2006). Accordingly, the district court should have applied the deliberate indifference standard to Scott's claim.

Applying the deliberate indifference standard is a "factually-intensive inquiry" that proceeds very differently from the analysis under the professional judgment standard. *See Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (discussing the deliberate indifference standard). Whether an official was deliberately indifferent entails both an objective and a subjective analysis. *Coleman v. Rahija*, 114 F.3d 778, 784-86 (8th Cir. 1997). Under the objective prong, Scott must show that he suffered from an objectively serious medical need. *See id*. at 784-85 A medical need is objectively serious if it either has been "diagnosed by a physician as requiring treatment" or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). Under the subjective prong, Scott must show that Benson actually knew of but deliberately disregarded his serious medical need. *See id.* This showing requires a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). As a result, Scott "must clear a substantial evidentiary threshold to show that [Benson] deliberately disregarded [his] needs by administering an inadequate treatment." *Meuir*, 487 F.3d at 1118. A "mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson*, 603 F.3d at 449 (alteration in original) (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)); *see also Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997); *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999).

Because the district court applied the wrong constitutional standard in denying qualified immunity, we remand this matter to the district court to apply the deliberate indifference standard in the first instance. *See Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (remanding the denial of summary judgment on the basis of qualified immunity because the district court applied the Fourth Amendment standard for excessive force instead of the Eighth Amendment standard for excessive force). Moreover, based on the facts assumed by the district court for purposes of summary

judgment, we cannot determine whether Benson is entitled to qualified immunity as a matter of law.  *See Handt v. Lynch*, 681 F.3d 939, 944-45 (8th Cir. 2012) (remanding because the district court's qualified immunity analysis repeatedly stated that "there were material issues of fact in dispute" and "lack[ed] consideration of the individual defendants' actions with respect to each of the constitutional claims").  The district court assumed these facts while applying the wrong constitutional standard, a standard that, as noted above, is inapplicable in cases involving the adequacy of medical care.  For example, the district court did not fully resolve the factual disputes relevant to whether Scott suffered from an objectively serious medical need, noting only that Scott's infection was routine at first, that Scott could squeeze pus from it on August 17, and that it eventually required surgery.  And by focusing on Benson's purported failure to prescribe medication to Scott, the district court did not fully discuss whether Benson provided some treatment to Scott at various points in time.  Because the district court applied the wrong constitutional standard, this is not an appropriate case for us "to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed."  *Johnson*, 515 U.S. at 319.  Determining the facts that the district court "likely assumed" in the course of applying an inapplicable legal standard would be too speculative of an exercise.  Accordingly, we remand this matter to the district court to engage in a full qualified immunity analysis applying the deliberate indifference standard in the first instance.

## III.  Conclusion

For the foregoing reasons, we vacate the district court's denial of summary judgment on the basis of qualified immunity and remand for further proceedings consistent with this opinion.

_____