# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1560

_____

Cecil Edwards, Jr.; Allen Merrick; Cleveland Smith; Kelcey Perry; Darrell Manning

*Plaintiffs - Appellees*

v.

Karl Byrd, Sheriff, Faulkner County, individually; John Randall, Captain, individually; Durwin Lasker, individually; Troy Porter, Lt., individually; Johnny Fowlkes, individually; Ryan Padgett, individually

*Defendants - Appellants*

Patricia Phillips-Winter; Faulkner County

*Defendants*

Bobby Brown, Major, individually; Kenny Medalin, individually; Gary Andrews, individually

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 16, 2014
Filed: April 24, 2014

_____

Before GRUENDER, BENTON, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Cecil Edwards, Allen Merrick, Cleveland Smith, Kelcey Perry, and Darrell Manning (collectively, the "plaintiffs") were pretrial detainees at the Faulkner County, Arkansas Detention Center.[1]  The plaintiffs were housed in Cell 309, which contains three separate living-quarters—designated "pods" A, B, and C—and a "day room" common area into which all three pods open.  The pod doors swing out toward the day room.  All of the plaintiffs resided in Pod B.  Karl Byrd was the sheriff of Faulkner County.  John Randall, Durwin Lakser, Troy Porter, Johnny Fowlkes, Ryan Padgett, Bobby Brown, Kenny Medalin, and Gary Andrews (collectively, the "guards") were security officers at the detention center.

On October 24, 2010, several detainees housed in Pods A and C created a disturbance in Cell 309's day room.  They stopped up a toilet, causing water to flow into the day room.  They began yelling and banging on the metal pod doors, and they covered the main cell door with a mattress and the main cell window with paper.  The plaintiffs did not participate in this disturbance but rather remained in Pod B.  In an effort to keep water from flowing into their pod, the plaintiffs placed a blanket in the doorway of their pod.  One of the riotous detainees in the day room ran past the pod door and pushed it closed, wedging the blanket beneath the door.

Responding to the disturbance, the guards assembled outside Cell 309's main door.  Several of them were armed with bean-bag guns.  The guards opened the door, and Fowlkes tossed a flash-bang grenade into the day room.  Having heard the

---

[1]In this interlocutory appeal from the denial of summary judgment based on qualified immunity, we accept the facts that the district court found to be supported by the record for the purpose of summary judgment, viewing the record in the light most favorable to the plaintiffs.  *See White v. Smith*, 696 F.3d 740, 753 (8th Cir. 2012); *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014).

grenade go off, the plaintiffs lay face-down on the floor or on their bunks with their hands placed in front of them. The guards entered the cell and subdued the Pod A and Pod C detainees.

The guards then attempted to enter Pod B. They pulled on the pod door, but it would not open because the towel had become jammed under the door. The guards could see through a small window in the door that the plaintiffs were lying submissively on the ground. The guards demanded that the plaintiffs open the door. Manning responded that the towel had become wedged under the door but that, if the guards would not shoot him, he would get up and dislodge it. Manning removed the towel and immediately returned to the floor.

At Randall's command, Fowlkes tossed a flash-bang grenade into the pod. The grenade detonated near Edwards's face, burning him and causing permanent hearing damage. Several of the guards entered the pod. Manning, Smith, and Merrick were kicked in the face or ribs; Merrick and Perry were shot with bean-bag guns. The guards then handcuffed the plaintiffs and dragged them into the day room, leaving them lying in the standing water that remained from the earlier disturbance. At no point during this incident did the plaintiffs resist or act aggressively.

The plaintiffs brought claims pursuant to 42 U.S.C. § 1983 against Sheriff Byrd and the guards, alleging a variety of constitutional violations. The district court granted summary judgment in favor of the defendants on several claims but denied qualified immunity with respect to the plaintiffs' individual-capacity excessive-force and failure-to-protect claims. Sheriff Byrd and the guards timely appealed the denial of summary judgment based on qualified immunity. For the reasons explained below, we reverse the district court's denial of summary judgment based on qualified immunity as to Sheriff Byrd, but we affirm the district court's order in all other respects.

Ordinarily, we lack jurisdiction to review the denial of a motion for summary judgment, because it does not constitute a final order. *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014); *see also* 28 U.S.C. § 1291. However, under the collateral order doctrine, we may conduct a limited interlocutory review of a district court's order denying summary judgment on the basis of qualified immunity. *Scott*, 742 F.3d at 339. "Our jurisdiction in such cases extends only to 'abstract issues of law,' not to 'determinations that the evidence is sufficient to permit a particular finding of fact after trial.'" *White v. Smith*, 696 F.3d 740, 753 (8th Cir. 2012) (alterations omitted) (quoting *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)); *see also Brown v. Fortner*, 518 F.3d 552, 557 (8th Cir. 2008) ("[W]e may not review a district court's finding of facts."). "Appellate review in these circumstances is therefore limited to determining whether all of the conduct that the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established federal rights." *White*, 696 F.3d at 753 (alterations omitted) (quoting *Shannon v. Koehler*, 616 F.3d 855, 861 (8th Cir. 2010)).

We review the district court's denial of summary judgment on the basis of qualified immunity *de novo*, viewing the evidence in the light most favorable to the non-moving party and giving that party the benefit of all reasonable inferences. *Scott*, 742 F.3d at 339. The defendants are entitled to qualified immunity unless (1) "the facts alleged or shown, construed in the light most favorable to [the plaintiffs], establish a violation of a constitutional or statutory right," *and* (2) the "right was clearly established as of [the date of the alleged violation], such that a reasonable official would have known that his actions were unlawful." *Krout*, 583 F.3d at 564.

Turning first to the plaintiffs' excessive-force claims, we conclude that the district court correctly denied summary judgment on the basis of qualified immunity. Because the plaintiffs were pretrial detainees, their relevant constitutional rights arise under the Due Process Clause of the Fourteenth Amendment. *Putnam v. Gerloff*, 639 F.2d 415, 419 (8th Cir. 1981). "[T]he Due Process Clause protects a pretrial detainee

from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *see also Andrews v. Neer*, 253 F.3d 1052, 1060-61 (8th Cir. 2001). Thus, our due-process excessive-force analysis focuses on whether a defendant's "purpose in [using force against a pretrial detainee] . . . was to injure, punish or discipline" the detainee. *Putnam*, 639 F.2d at 421; *see also Bell v. Wolfish*, 441 U.S. 520, 538 (1979). However, the Due Process Clause affords pretrial detainees at least as much protection as the Eighth Amendment provides to convicted prisoners.[2] *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). Therefore, if the use of force in this case would have violated the Eighth Amendment had the plaintiffs been prisoners, that conduct necessarily violated the plaintiffs' rights under the Fourteenth Amendment.

The facts that the district court found to be supported by the record for the purpose of summary judgment would support a claim of excessive force in violation of the Eighth Amendment. "When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The district court found for the purpose of summary judgment that, immediately before the guards entered Pod B, the plaintiffs were lying submissively, face-down, in the pod. The guards could see this through the window in the pod door.[3] The plaintiffs did not

---

[2]Conduct constituting "cruel and unusual punishment" *a fortiori* constitutes punishment. And the Due Process Clause prohibits *any* punishment of a pretrial detainee, be that punishment cruel-and-unusual or not. *Bell*, 441 U.S. at 535.

[3]At oral argument, the appellants argued that the pod was dark and, thus, that they could not see the pod's interior clearly. As noted above, however, we are constrained by the facts that the district court assumed for the purpose of summary judgment, and we must take the record in the light most favorable to the non-moving party, that is, to the plaintiffs.

resist or otherwise act aggressively. Nevertheless, the guards employed a flash-bang grenade in close quarters, kicked the compliant detainees, and shot them with bean-bag guns. These facts, if proved, could show that the guards did not apply this force in order to restore order or discipline but rather for the sole—and impermissible—purpose of inflicting unjustified harm on the detainees. At the time of the incident, it was clearly established that such conduct would violate the Eighth Amendment's proscription of cruel and unusual punishment. *United States v. Miller*, 477 F.3d 644, 647-48 (8th Cir. 2007) (holding that kicking and stomping on inmate "without just cause or reason" would violate Eighth Amendment); *Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003) (reversing grant of summary judgment based on qualified immunity where guards beat prisoner who was not resisting or causing a disturbance); *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) (holding that use of stun gun for reason other than good-faith effort to maintain or restore order violated Eighth Amendment). To be sure, the guards vigorously dispute the facts that the district court found to be supported by the record. But we lack jurisdiction to field such factual arguments on interlocutory review. *See White*, 696 F.3d at 753.

The appellants also argue that video from the detention center's security camera system conclusively disproves the plaintiffs' account of the incident. As noted above, generally "we may not review a district court's finding of facts." *Brown*, 518 F.3d at 557. But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott v. Harris*, the Supreme Court found that video footage of a police chase conclusively demonstrated, contrary to the plaintiff's account of the event, that police had acted reasonably under the circumstances and had not committed a constitutional violation, thus entitling them to qualified immunity. *Id.* at 380-81. Here, the appellants urge us similarly to find that the detention-center security video conclusively disproves the plaintiffs' account of the incident. But the video in this case simply is not conclusive

-6-

as was the video in *Scott v. Harris*. As the appellants conceded at oral argument, the interior of Pod B—where the conduct at the heart of this case occurred—cannot be seen on the video. Instead, the video depicts only the day room, and it does not blatantly contradict the facts found by the district court for the purpose of summary judgment. Thus, the appellants' reliance on *Scott v. Harris* is misplaced.

The facts that the district court found to be supported by the record for the purpose of summary judgment also support a claim for failure to protect the plaintiffs from harm in violation of the Due Process Clause. "A jail official violates the Due Process Clause . . . when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013). This standard requires a detainee to make two showings, one objective—that he faced a substantial risk of serious harm—and one subjective—that "the official knew of and disregarded the risk to the inmate's safety." *Id.* At the time of the incident, it was clearly established that a jail official violates a detainee's due-process rights if the official knows that another official is using excessive force against the detainee but fails to intervene. *Putnam*, 639 F.2d at 423; *see also Krout*, 583 F.3d at 565-66 (denying qualified immunity to police officers who failed to intervene to prevent use of excessive force by another officer). Here, the district court found that the guards were aware that excessive force was being used against the plaintiffs but did not intervene to protect them. Thus, the district court correctly denied the guards qualified immunity on the failure-to-protect claim.

At oral argument, counsel for the plaintiffs conceded that Sheriff Byrd was not present at the Faulkner County Detention Center on October 24, 2010. Given his absence, he could not have used excessive force against the plaintiffs, nor could he have had an opportunity to intervene to prevent the guards from employing excessive force. These individual-capacity excessive-force and failure-to-protect claims are the only remaining claims against Sheriff Byrd. Thus, we conclude that Sheriff Byrd is

entitled to qualified immunity, and we reverse the district court's denial of summary judgment on that basis only as to Sheriff Byrd.

For the foregoing reasons, we reverse the district court's denial of summary judgement based on qualified immunity with respect to Sheriff Byrd. However, we affirm the district court's denial of summary judgment based on qualified immunity with respect to the guards.

_____