# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2250

_____

Robin Thompson, as Personal Representative of the Estate of Jermell Thompson, deceased

*Plaintiff - Appellee*

v.

James "Clint" Murray, individually and in his official capacity

*Defendant - Appellant*

Dustin Caudell, individually and in his official capacity; City of Morrilton, Arkansas, a municipality

*Defendant*s

Norbert Gunderman, Jr., individually and in his official capacity

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 17, 2015
Filed: September 2, 2015

_____

Before WOLLMAN and GRUENDER, Circuit Judges, and GRITZNER, District Judge.[1]

_____

WOLLMAN, Circuit Judge.

Following a police pursuit, Officer James "Clint" Murray shot Jermell Thompson (Jermell) through the windshield and side window of Jermell's vehicle. Jermell died from the gunshot wounds. Robin Thompson (Thompson), Jermell's mother and the personal representative of his estate, brought suit against Murray, Officer Dustin Caudell, Chief of Police Norbert Gunderman, Jr., and the City of Morrilton (the city) (collectively, Defendants). Thompson alleged claims of excessive force, supervisory liability, and municipal liability under the federal Civil Rights Act, 42 U.S.C. § 1983, and claims under Arkansas law. Murray, Caudell, Gunderman, and the city moved for summary judgment. The district court[2] granted Caudell's motion, denied the city's motion, granted Defendants' motion as it pertained to Thompson's duplicative official-capacity claims against Murray and Gunderman, and denied Murray's motion for summary judgment based on qualified immunity. Murray and Gunderman bring this interlocutory appeal. We dismiss Murray's appeal for lack of jurisdiction, and because the district court did not address or rule on Thompson's claims against Gunderman in his individual capacity, we dismiss Gunderman's appeal for want of a reviewable order.

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

I.

On the afternoon of November 29, 2008, an employee of the Number 9 liquor store in Morrilton, Arkansas, called 911 to report the theft of a half gallon of Crown Royal whiskey. The caller described the suspect as a black man, reported that he might be intoxicated, stated that the man had left driving a maroon car, and gave the license plate number. Murray and Caudell of the Morrilton Police Department responded in separate police cruisers. Caudell located the vehicle—a 1992 Chevy Corsica—first and began following it, activating his blue lights and siren. Murray quickly caught up and followed behind Caudell's police cruiser. Jermell, who was driving the Corsica, continued on his course in a manner that did not respond to the blue lights and sirens. Both Caudell's and Murray's dashboard cameras recorded the incident. The footage shows that Jermell stayed in his lane throughout the pursuit and was not driving erratically.

When Jermell reached a red light, he stopped or slowed his vehicle and did not proceed through the intersection. The dashboard cameras show that other cars at the intersection had also come to a stop or were slowing to a stop. To Jermell's left was a left-turn lane. Caudell and Murray attempted to "box in" Jermell's vehicle. Caudell pulled to the shoulder, stopping to the right of Jermell's car, and Murray drove around to the left of Jermell's vehicle and stopped just in front of Jermell's vehicle at an angle that blocked Jermell's path. The footage from Caudell's dashboard camera shows that the other vehicles at the intersection were stopped or slowing to a stop and that Jermell began backing up his vehicle until it was out of view of the camera.

The subsequent events occurred within a few seconds. The parties agree that Murray exited his vehicle and positioned himself near the rear of his cruiser. Defendants suggest that Murray positioned himself near the back right quarter panel of his vehicle, while Thompson contends that Murray was positioned near the back left of his vehicle. An expert opinion and the timing of events offer some support for

Thompson's theory. The parties agree that Jermell stopped backing up and began moving forward, but Thompson argues that Jermell was moving forward at a speed as low as two miles per hour, while Defendants claim that Jermell's vehicle began accelerating forward, rapidly reaching a speed of approximately twenty miles per hour or more. The parties also dispute in which direction Jermell's car moved forward. Thompson claims that Jermell was moving forward and to the left, into the left turn lane and around Murray and Murray's police cruiser. Thompson's theory has support in the fact that Jermell's vehicle ultimately did circumvent Murray's police car, going around Murray's car on the left.[3] Defendants contend that Jermell was moving in Murray's direction and appeared to be attempting to run over Murray. Several witnesses also stated that it appeared that Jermell was attempting to run over Murray or that Jermell's vehicle would hit Murray.

When Jermell's vehicle began moving forward, Murray began firing at it. Murray moved to his right, claiming that he did so to avoid being hit by Jermell's car. Thompson suggested below, however, that Murray's movement to the right actually placed him in the path of Jermell's car. Caudell fired several shots at Jermell's tires. Murray's shots went through the front windshield and driver's side window of the vehicle; Caudell's shots missed their target. Jermell's vehicle went left of and around Murray's cruiser, then veered to the right, across the intersection, and into a ditch. Jermell died from gunshots to his face and chest.

The district court noted that Murray's entitlement to qualified immunity depended on whether it was reasonable for Murray to believe that Jermell posed a threat of serious physical harm to Murray or to others at the time of the shooting. The

---

[3]In addition, several witnesses gave statements supporting the notion that Jermell's vehicle was moving forward slowly and was headed around the police car. These statements were offered in opposition to summary judgment and appeared only in the report of one of Thompson's experts, rather than in the form of affidavits.

district court determined that the answer to that inquiry depended on a number of disputed issues, including: (1) where Murray was standing when Jermell's vehicle began moving forward, (2) how far away Jermell's vehicle was from Murray, (3) which direction Jermell's vehicle was moving, (4) how fast Jermell's vehicle was moving, (5) where Murray was standing when he began firing at Jermell, (6) how many shots Murray fired, (7) where Murray was standing when he fired shots through the side window, and (8) whether it was reasonable for Murray to believe that Jermell still posed a threat when he fired shots through the side window.

## II.

The "first and fundamental question" in an appeal from a denial of qualified immunity is that of jurisdiction. Walton v. Dawson, 752 F.3d 1109, 1115 (8th Cir. 2014) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). An order denying qualified immunity is immediately appealable "to the extent that it turns on an issue of law." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). In an interlocutory appeal from such an order, our jurisdiction is limited to resolving abstract questions of law related to the qualified-immunity determination—typically, whether the allegedly infringed federal right was clearly established. Behrens v. Pelletier, 516 U.S. 299, 313 (1996). We lack jurisdiction to review the district court's determination regarding evidence sufficiency—*i.e.*, what facts a party may or may not be able to prove at trial. Johnson v. Jones, 515 U.S. 304, 313 (1995). We do not have jurisdiction to review whether a factual dispute is "genuine," but we do have jurisdiction to review the purely legal question whether a dispute identified by the district court is material. See, e.g., Kovacic v. Villarreal, 628 F.3d 209, 211 n.1 (5th Cir. 2010).

Because our jurisdiction is limited in an interlocutory appeal from an order denying qualified immunity, we are constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision, see Ellison v.

Lesher, No. 13-3371, slip op. at 2-3, 2015 WL 4645667, at *1 (8th Cir. Aug. 6, 2015), to the extent that version is not "blatantly contradicted by the record," Walton, 752 F.3d at 1116 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Typically, if the district court did not state which facts it found were adequately supported, we must determine which facts it likely assumed by viewing the record in the light most favorable to the plaintiff. See Lockridge v. Bd. of Trs. of the Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc).

Here, the district court's list of disputed issues allows us to deduce which facts it likely assumed in reaching its decision. We can infer, for example, that the district court likely assumed that when Jermell's vehicle began moving forward at the intersection, it was accelerating at a slow rate, rather than quickly accelerating to approximately twenty miles per hour, as Defendants claim. We can also infer that the district court likely assumed that as Jermell's car began to move forward, Murray was standing near the back left of his police cruiser—the location where Thompson claims Murray stood and which arguably offered more protection from Jermell's vehicle than the area near the back right quarter panel of the cruiser. The district court also likely assumed that Murray was not standing either directly in the path of Jermell's car or near enough to Jermell's car for the slow-moving vehicle to constitute an immediate threat.

The record does not blatantly contradict the version of the facts that the district court likely assumed. See Walton, 752 F.3d at 1116. This version of the facts has at least some support in the forensic evidence, camera footage, the opinions of Thompson's experts, and common sense. Defendants argue that the facts were undisputedly otherwise, but this argument challenges the district court's conclusions regarding evidence sufficiency and the genuineness of factual disputes—conclusions that we have no jurisdiction to review.

Murray is entitled to qualified immunity unless the above-described facts demonstrate that he violated a clearly established constitutional or statutory right of which a reasonable person would have known. See Richmond v. City of Brooklyn Ctr., 490 F.3d 1002, 1006 (8th Cir. 2007). An officer may not use deadly force against a fleeing suspect unless the suspect poses an immediate and significant threat of serious injury or death to the officer or to bystanders. Capps v. Olson, 780 F.3d 879, 886 (8th Cir. 2015); see also Tennessee v. Garner, 471 U.S. 1, 11 (1985). This general standard can be sufficient to clearly establish a fleeing suspect's rights in a case where they have obviously been infringed. Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

Defendants argue that in a more particularized sense, "there is no case law clearly establishing that the use of deadly force is inappropriate" against a suspect who is "bearing down on" an officer and who is "driving into oncoming traffic through a heavily trafficked intersection while running a red light after being chased by police and refusing to stop even when guns are aimed at him." Although this argument is framed to pose the purely legal question whether Jermell's right to be free from the use of deadly force was clearly established, it is founded on facts not assumed by the district court—for example, that, at the time of the shooting, Jermell's vehicle was moving toward Murray, who was in an unprotected position, or toward the slowed or stopped oncoming traffic, and at a high enough speed to pose an immediate and significant risk of serious injury. At bottom, this is an argument about the sufficiency of the evidence, a question we lack jurisdiction to review, however inventively it is structured as an abstract legal argument. See Mahamed v. Anderson, 612 F.3d 1084, 1086-87 (8th Cir. 2010).

Defendants also contend that even assuming that Thompson is correct that Murray was not in immediate danger when Jermell's car began moving forward, Murray's mistaken belief that he was in danger was reasonable because it accorded with what several witnesses believed. These witnesses' versions of events, however,

were not likely assumed by the district court, and so we lack jurisdiction to weigh the sufficiency and credibility of the evidence supporting Thompson's version of the facts against the relative credibility of these witnesses.

Defendants' remaining challenges are similarly premised on facts that the district court did not likely assume—including that Jermell's vehicle was moving toward Murray and that it was close enough and accelerated quickly enough to pose a significant and immediate threat at the time of the shooting. Defendants' arguments about the district court's denial of qualified immunity to Murray essentially challenge the district court's determination that there were genuine disputes over issues of material fact. We thus lack jurisdiction over Murray's interlocutory appeal.

With respect to Gunderman's appeal, the district court addressed Gunderman's role while considering the city's motion for summary judgment on municipal liability. It did not address Thompson's claims against Gunderman in his individual capacity, however, and did not enter an order denying Gunderman qualified immunity, or otherwise resolving Gunderman's motion for summary judgment on the individual-capacity claims against him.[4]

III.

Murray's appeal is dismissed for lack of jurisdiction. Gunderman's appeal is dismissed for want of a reviewable order

_____

[4]Although the parties make arguments in their briefs regarding the city's municipal liability, the city was not listed in the notice of appeal. Even if the city were an appellant, the city's municipal liability is not inextricably intertwined with any qualified-immunity appeal over which we have jurisdiction. Kincade v. City of Blue Springs, 64 F.3d 389, 394 (8th Cir. 1995) (noting that the exercise of pendent appellate jurisdiction may be appropriate if an otherwise unappealable decision is "inextricably intertwined" with an appealable one).