# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3930

_____

Dustin Burnikel

*Plaintiff - Appellee*

v.

Michael Fong, individually and in his official capacity as a law enforcement officer with the Des Moines Police Department; Greg Wessels, individually and in his official capacity as a law enforcement officer with the Des Moines Police Department

*Defendants - Appellants*

City of Des Moines, Iowa

*Defendant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 18, 2017
Filed: April 2, 2018

_____

Before WOLLMAN, BEAM, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Dustin Burnikel sued Officers Michael Fong and Greg Wessels and the City of Des Moines, Iowa, alleging federal claims of excessive force and municipal liability under 42 U.S.C. § 1983 and state tort claims under Iowa law. As relevant here, the district court[1] denied the officers' motion for summary judgment based on their claim of qualified immunity.[2] Fong and Wessels now bring this interlocutory appeal. We conclude, based on the facts assumed by the district court, that the motion was properly denied. We lack jurisdiction over Fong and Wessels's appeal of the denial of summary judgment on the state law claims.

## I. Background

On February 15, 2013, Burnikel, a resident of a northeastern Iowa town, attended a wrestling tournament and stayed with his family at a Des Moines hotel. After having a beer at the hotel, Burnikel, his cousin Darrick Burnikel (Darrick), and his friend Justin Sovereign went to a bar in downtown Des Moines, where Burnikel had two or three more beers. When they left the bar in the early morning hours of February 16, they walked to the cab stand located on the corner of Third Street and Court Avenue.

Local cab companies hire off-duty Des Moines police officers to maintain order at the Third Street and Court Avenue cab stand. When working the cab stand, officers wear their uniforms and perform the same duties as on-duty police officers. The officers usually work in pairs, with one officer standing at the corner and another officer walking up and down the line. Des Moines police officers Fong and Wessels were working the cab stand in the early morning hours of February 16, 2013. Both

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

[2]The district court also denied in part the City's motion for summary judgment. The City has not appealed, and we do not address the claims against it.

officers wore their winter uniforms, which were dark blue winter coats with police patches located on the arms and police badges located on the chests.

According to Fong and Wessels, a group of four or five men and women approached the cab stand at approximately 2:20 a.m. that morning. One of the men refused to wait his turn for a cab and argued with the officers, who soon decided to arrest the man for public intoxication. Wessels testified that as he was escorting the arrestee to the police wagon, Breanna Hunemiller grabbed him from behind. Upon seeing Hunemiller intervene, Fong grabbed Hunemiller's coat collar, whereupon Hunemiller tripped over a curb, causing them both to tumble to the ground.

As Burnikel stood near the back of the line at the cab stand, he saw a man dressed in black throw a woman to the ground. Burnikel heard the woman scream and cry, and he thought the man was attacking her. Not knowing that the man was a police officer and not seeing the police insignias on his coat, Burnikel called out, "What are you doing to her? Why are you hurting her?" According to Sovereign, Burnikel's hands were at his sides and facing out when he called out to Fong, as if to indicate that he was asking a question. Darrick testified that Burnikel's "feet never moved" and that his arms were positioned to indicate that "he was in disbelief, like, What's happening right in front of me?"

Upon hearing Burnikel's questions, Fong released the woman and immediately deployed pepper spray onto Burnikel's face. The burning sensation caused Burnikel to bend over and lift his hands to his eyes. Sovereign and Darrick saw him step or stumble backwards. Blinded by the pepper spray, Burnikel remembers being punched in the stomach with a blow that brought him to his knees. He continued to be struck in the stomach, sides, mid-section, and testicles until he fell to the ground.

The beating continued as Burnikel tried to use his hands to protect his face. After one of the officers moved Burnikel's arm, Fong punched Burnikel in the face.

All the while, Burnikel did not fight back. In response to commands to stop resisting, Burnikel yelled, "I didn't do anything," "I'm not resisting," and "Stop hitting me." Neither Fong nor Wessels identified himself as a police officer during the altercation. After the officers finally handcuffed Burnikel, they lifted him from the ground and dropped him face-first onto the concrete.

Fong and Wessels dispute Burnikel's account of the facts and maintain that they used only the force necessary to accomplish Burnikel's arrest. According to the officers, Burnikel yelled at Fong and moved toward him in an aggressive manner, to which Fong responded by yelling, "[B]ack up or you're going to jail." Fong claims that when Burnikel did not retreat and instead assumed a fighting stance, Fong used pepper spray to incapacitate him. Because he believed that Burnikel was preparing to fight because his hands were clenched into fists, Wessels decided to release the arrestee in order to help Fong. The officers claim that Burnikel pulled away as they tried to take hold of him, so Fong delivered two knee strikes to Burnikel's mid-section and Wessels punched him twice in the groin. Burnikel finally fell to the ground, landing face-down with his hands beneath him. The officers testified that after Burnikel disobeyed commands to place his hands behind his back, Fong kneeled next to him and punched him in the nose, which finally enabled the officers to handcuff him.

The officers believed that Burnikel was intoxicated. According to Fong, Burnikel refused his offer of a preliminary breathalyzer test. Burnikel admits that he had had a few beers over the course of the evening, but denies both that he was intoxicated and that he was offered a breathalyzer test. Many of Burnikel's teeth were cracked or broken during the encounter with the officers. He was badly bruised and suffered injuries to his face, back, ribs, legs, and testicles. He was arrested and charged with three misdemeanors: interference with a police officer, public intoxication, and resisting arrest. Following a two-day trial, a jury acquitted Burnikel on all counts.

In denying the officers' motion for summary judgment, the district court concluded that Burnikel "ha[d] alleged a violation of his clearly established right to be free from excessive force." D. Ct. Order of Oct. 12, 2016, at 10. The court accepted as true Burnikel's version of the facts, but noted that "[f]rom the point Fong and Hunemiller fell to the ground, the parties dispute almost everything." Id. at 3. The court also denied the officers' motion for summary judgment on Burnikel's state law claims of assault and battery, false arrest, and malicious prosecution.

## II. Discussion

We have jurisdiction over this interlocutory appeal under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Our jurisdiction is limited, however, to "abstract issues of law" and does not extend to the "determination that the evidence is sufficient to permit a particular finding of fact after trial." Johnson v. Jones, 515 U.S. 304, 314, 317 (1995). Accordingly, we accept as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent they are not "blatantly contradicted by the record." Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). We review *de novo* the issues of law. See Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009).

Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In cases involving more than one government official, qualified immunity requires that each official's conduct be considered individually, "because a person 'may be held personally liable for a constitutional violation only if his *own* conduct violated a clearly established constitutional right.'" Manning v. Cotton, 862 F.3d 663, 668 (8th

-5-

Cir. 2017) (quoting Baribeau v. City of Minneapolis, 596 F.3d 465, 482 (8th Cir. 2010)).[3]

We analyze excessive force claims in the context of seizures under the Fourth Amendment, applying its reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). "The Fourth Amendment requires us to ask, based on the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Ellison v. Lesher, 796 F.3d 910, 916 (8th Cir. 2015) (quoting Graham, 490 U.S. at 397). Circumstances relevant to the reasonableness of the officers' conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Fong and Wessels argue that the district court failed to consider the circumstances surrounding the use of force from their perspectives. Specifically, Fong asserts that his use of pepper spray was reasonable because Burnikel quickly approached him and tried to interfere with Hunemiller's arrest by yelling and assuming a fighting stance. Fong also claims that the knee strikes to Burnikel's mid-section and the punch to Burnikel's nose constituted the use of reasonable force because Burnikel failed to comply with the officers' orders and physically resisted arrest. Similarly, Wessels argues that punching Burnikel in the groin was his "attempt[] to put the threatening individual into custody as promptly and reasonably as possible." Appellants' Br. 26. Fong and Wessels argue that their use of force was

---

[3]To the extent the district court failed to conduct an individualized qualified immunity analysis for each officer, we do so here. See Manning, 862 F.3d at 668 (holding that the district court erred by failing to conduct an individualized analysis for each officer and conducting individual analyses on appeal); Roberts v. City of Omaha, 723 F.3d 966, 974 (8th Cir. 2013) (same).

objectively reasonable as a matter of law and thus entitled them to qualified immunity.

Fong and Wessels have recounted disputed material facts in their favor, but we are not permitted to accept their version of events in ruling upon the legal issue they raise. As explained above, "we are constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision." Thompson, 800 F.3d at 983. Viewed in that light, the facts confronting Fong were as follows: Burnikel stood with his hands facing out as he yelled something to the effect of "What are you doing to her?" Burnikel "did not assume an aggressive stance and . . . was not given the opportunity to retreat." D. Ct. Order of Oct. 12, 2016, at 4. Although Burnikel had committed no crime and had done nothing more than inquire about Hunemiller's well-being, Fong approached him and deployed pepper spray, notwithstanding Fong's failure to identify himself as a police officer or to issue any commands. He instead began beating Burnikel, who was submissive and tried only to protect his face with his hands. Despite his training to avoid striking a person's head, Fong punched Burnikel in the nose.

Wessels may have perceived a tense situation when he looked over his shoulder and saw Fong and Burnikel, but by the time Wessels released the intoxicated individual he had been escorting and came to Fong's aid, Burnikel had been blinded by the pepper spray and was not fighting or resisting arrest. Wessels nonetheless joined in the beating, punching Burnikel twice in the testicles, despite his training to avoid striking a person's genitals.

Under the version of the facts that the district court accepted for purposes of summary judgment, Fong and Wessels delivered "repeated strikes, punches, and blows to Burnikel," as Burnikel pleaded with them to "stop hitting him because he wasn't resisting them or doing anything wrong." D. Ct. Order of Oct. 12, 2016, at 10. The district court also likely accepted Burnikel's assertion that the officers

-7-

handcuffed him, lifted him off the ground, and dropped him face-first onto the concrete. Under this version of the facts, Burnikel has established that both Fong and Wessels violated his Fourth Amendment right to be free from excessive force.

Fong and Wessels argue that their use of force violated no clearly established Fourth Amendment right. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted)). We may not "define clearly established law at a high level of generality," but rather must determine "whether the violative nature of *particular* conduct is clearly established." Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)).

Fong contends that it was not clearly established that a "a blow to the Plaintiff's nose with his fist" would constitute excessive force in light of his claim that Burnikel "pos[ed] a threat to the safety of himself or others" and "appeared to resist arrest even after being taken to the ground." Appellants' Br. 25. Similarly, Wessels argues that it was not clearly established that a punch to the groin constituted "an excessive use of force against a resistant, non-compliant individual reasonably perceived to be a threat and not yet under control of the officers." Appellants' Br. 28 (emphasis omitted). The officers have defined the constitutional right in terms of disputed facts viewed in their favor—that Burnikel appeared threatening, that he failed to comply with orders, and that he resisted arrest. This they are not entitled to do. The officers have, in effect, asked us to examine a matter over which we lack jurisdiction—"*i.e.*, which facts a party may, or may not, be able to prove at trial." Johnson, 515 U.S. at 313; see Franklin ex rel. Franklin v. Peterson, 878 F.3d 631, 638 (8th Cir. 2017) ("While we have jurisdiction to determine whether conduct the district court deemed sufficiently supported for purposes of summary judgment constitutes a violation of clearly established law, we lack jurisdiction to determine whether the evidence could support a finding that particular conduct occurred at all."); Thompson,

800 F.3d at 984 ("At bottom, this is an argument about the sufficiency of the evidence, a question we lack jurisdiction to review, however inventively it is structured as an abstract legal argument.").

Assuming that Burnikel's version of the story is true—that he merely inquired about Hunemiller's well-being, that he did not threaten anyone, did not appear to threaten anyone, did not resist arrest, and did not fail to comply with the officers' commands—a reasonable officer standing in Fong's or Wessels's shoes would have understood that the amount of force they used was excessive.[4]  Long before Burnikel's arrest, "this court (among others) had announced that the use of force against a suspect who was not threatening and not resisting may be unlawful," Shannon v. Koehler, 616 F.3d 855, 864 (8th Cir. 2010) (citing Bauer v. Norris, 713 F.2d 408, 412 (8th Cir. 1983); Feemster v. Dehntjer, 661 F.2d 87, 89 (8th Cir. 1981)), and it was clearly established in 2013 that it was unlawful to strike a nonviolent person who had committed no crime, who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only infraction was to call out to a police officer, whom he mistakenly thought was a man attacking a woman.  See Brown, 574 F.3d at 499 ("[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.") (citing Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002); Henderson v. Munn, 439 F.3d 497, 503 (8th Cir. 2006)); see also Ellison, 796

---

[4]The district court did not address whether Fong's initial use of pepper spray violated clearly established federal law, and Burnikel does not seem to argue on appeal that it did.  Viewing the facts in the light most favorable to Burnikel, the situation confronting Fong was that of a man yelling at a police officer during a late-night arrest near a line of bar patrons, many of whom were intoxicated.  Whether every reasonable officer would have understood that the initial discrete use of force—Fong's deployment of pepper spray—would violate Burnikel's Fourth Amendment right is a question that we do not address.  Suffice it to say that the use of pepper spray and the effect it had on Burnikel are circumstances relevant to the reasonableness of the officers' subsequent use of force.

F.3d at 914 ("A plaintiff need not show that the 'very action in question has previously been held unlawful,' but he must establish that the unlawfulness was apparent in light of preexisting law.") (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), and citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)).  It was also clearly established in 2013 "that when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment."  Blazek v. City of Iowa City, 761 F.3d 920, 925 (8th Cir. 2014) (quoting Henderson, 439 F.3d at 503).  Accordingly, a reasonable officer would have understood that purposefully dropping Burnikel face-first onto the concrete after he had been subdued and handcuffed would violate clearly established law.

We affirm the district court's denial of qualified immunity to Fong and Wessels.  Because our resolution of the qualified immunity appeal does not necessarily resolve Burnikel's state law claims against the officers, we dismiss for lack jurisdiction the portion of the appeal concerning those state law claims.[5]  See Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc).

————————————————

————————————

[5]Fong and Wessels argue that they were entitled to qualified immunity on the § 1983 false arrest claim, but in our view, Burnikel has not alleged any such federal claim.  His complaint alleges the elements of false arrest under Iowa law:  that Burnikel "was detained or restrained against his will" by Fong and Wessels and that the detention or restraint was unlawful.  Compl. ¶¶ 84, 87, 105, 107; see Kraft v. City of Bettendorf, 359 N.W.2d 466, 469 (Iowa 1984).  Likewise, Burnikel's motion for summary judgment argued only the state-law false arrest claim, his opposition to the officers' motion responded only to their defense of discretionary-function immunity under Iowa law, and the false arrest section of his appellate brief cites no law.  Accordingly, we do not address a federal qualified immunity defense to a § 1983 false arrest claim that has never been advanced.