# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4080

_____

Sheldon Thompson

*Plaintiff - Appellee*

v.

Monticello, Arkansas, City of, A Public Body Corporate and Politic; Robert
Rosegrant, In his Official Capacity as Chief of Police

*Defendant*s

Ray Singleton, In his Individual and Official Capacity as Police Officer for the
City of Monticello AR

*Defendant - Appellant*

Eddie Deaton, In his Official Capacity as Chief of Police for the City of
Monticello, Arkansas

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: January 11, 2018
Filed: July 6, 2018

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

KELLY, Circuit Judge.

Former City of Monticello, Arkansas, police officer Ray Singleton appeals after the district court[1] denied his request for qualified immunity at summary judgment in this 42 U.S.C. § 1983 action alleging he used excessive force against Sheldon Thompson.

## I. Background

The following facts are undisputed. In the early morning hours of December 12, 2010, Thompson was walking to his home in Monticello, Arkansas. He was drunk, but he was accompanied by another adult male, Carl Tyson, Jr., as well as his teenaged nephew, Tajah Hicks. Singleton saw Thompson, Tyson, and Hicks from his police cruiser, and ordered them to stop. Tyson and Hicks stopped, but Thompson continued walking. Singleton exited his cruiser and walked in front of Thompson, taking a semi-circular route so as to position Thompson between himself and his cruiser. He drew his taser on Thompson, who then stopped walking. After pulling his taser, Singleton twice ordered Thompson to walk back to the cruiser. At first, he did not comply, and simply stood still. Then, Singleton ordered, "let me see your hands." After Thompson showed his hands, Singleton again directed him to walk back to his cruiser. Thompson dropped his arms to his sides, placed his hands behind his back but underneath his coat, turned around, and started walking toward the cruiser. After taking approximately five steps, he turned back around to face Singleton, raised his left arm to point toward a nearby residence, and said, "You know what? That's my house right over there." At that point, Singleton tased Thompson,

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

-2-

who fell to the ground. Thompson's head struck the pavement, rendering him unconscious. When another officer arrived on the scene shortly thereafter, Singleton said, "He [was] refusing to go back and do what I told him to do[. T]ased him and I think he hit his head when he fell."

Singleton's taser recorded these events from the moment it was unholstered, and the parties offer divergent descriptions of what that video depicts. In Singleton's view, the video shows that Thompson failed to fully comply with his order that he show his hands, was being belligerent, demonstrated resistance, and turned around in an "aggressive manner," causing Singleton to justifiably fear for the safety of both men. According to Thompson, the video shows that he fully complied with Singleton's order that he show his hands, started to walk back to the cruiser in accordance with Singleton's order that he do so, and innocently turned around to tell Singleton he lived nearby and to point at his house. Thompson does not remember the incident, but denies being aggressive. He admits he was intoxicated and being disagreeable.

Recognizing its obligation to take the taser video and all other facts in the light most favorable to Thompson, the district court summarized the facts as follows:

> Officer Singleton initiated a stop of three men who were walking on the side of the road at night. Mr. Thompson was suspected of committing a minor, nonviolent crime late at night. After the stop was initiated, two of the men obeyed Officer Singleton's commands to stop. One man, Mr. Thompson, did not obey Officer Singleton's first command. Officer Singleton then pulled out his taser, and Mr. Thompson stopped walking. Mr. Thompson then complied with Officer Singleton's commands by extending his arms, showing his palms, and walking towards Officer Singleton's patrol car as directed. At this point, Officer Singleton knew that Mr. Thompson did not have a weapon in his hands.

-3-

Mr. Thompson then placed his hands under or inside his coat while he was walking. Officer Singleton did not instruct Mr. Thompson to take his hands out of his coat or to otherwise show his hands a second time. Mr. Thompson then turned towards Officer Singleton with both hands visible and outside of his coat—a disputed fact the court must resolve in favor of Mr. Thompson at this stage—and raised one arm to point towards his house. Officer Singleton then utilized his taser without warning and without providing any additional instructions to Mr. Thompson.

The district court reasoned that, viewing the facts in the light most favorable to Thompson, "Officer Singleton intentionally tasered, without warning, an individual who was stopped for a nonviolent misdemeanor offense and who was not resisting or fleeing arrest while the individual's hands were visible." The district court then explained that, because there remained genuine issues of material fact, it could not conclude that Singleton's use of the taser was objectively reasonable as a matter of law, and denied his request for qualified immunity. Singleton appeals.

## II. Discussion

"Ordinarily, we lack jurisdiction to review the denial of a motion for summary judgment, because it does not constitute a final order. However, under the collateral order doctrine, we may conduct a limited interlocutory review of a district court's order denying summary judgment on the basis of qualified immunity." Edwards v. Byrd, 750 F.3d 728, 731 (8th Cir. 2014) (internal citations omitted); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Our jurisdiction "extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial." Edwards, 750 F.3d at 731 (quoting White v. Smith, 686 F.3d 740, 753 (8th Cir. 2012)). "More precisely, we have jurisdiction to consider the 'purely legal' issue of whether the facts, taken in the light most favorable to [Thompson], support a finding that [Singleton] violated [Thompson's] clearly established constitutional rights." Langford v. Norris, 614 F.3d 445, 455 (8th Cir.

-4-

2010). Our review is thus "limited to determining whether all of the conduct that the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established federal rights." Edwards, 750 F.3d at 731 (quoting White, 686 F.3d at 753). "Accordingly, we accept as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent they are not 'blatantly contradicted by the record.'" Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) (quoting Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015)). "We review *de novo* the issues of law." Id.

"Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known." Id. "Courts conduct a two-part inquiry to determine whether qualified immunity protects a government official from liability: (1) whether the facts taken in the light most favorable to [Thompson] make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the alleged violation." Buckley v. Ray, 848 F.3d 855, 863 (8th Cir. 2017).

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Coker v. Ark. State Police, 734 F.3d 838, 842 (8th Cir. 2013) (quoting Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006)). "The Fourth Amendment requires us to ask, based on the perspective of a reasonable officer on the scene, 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Ellison v. Lesher, 796 F.3d 910, 916 (8th Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). Relevant considerations include: "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

-5-

he is actively resisting arrest or attempting to evade arrest by flight.'" Burnikel, 886 F.3d at 710 (quoting Graham, 490 U.S. at 396). We may also consider whether "the situation is 'tense, uncertain, and rapidly evolving,' which would force an officer to make 'split-second judgments' about how much force is necessary." Coker, 734 F.3d at 842–43. "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (quoting Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009)).

Initially, Singleton argues that the district court relied on facts that are blatantly contradicted by the evidence in the record. In Scott v. Harris, the Supreme Court held that police officers were entitled to qualified immunity because a video conclusively established that the officers had acted reasonably under the circumstances and, thus, had not committed a Fourth Amendment violation. 550 U.S. 372, 380–81 (2007). Relying on Scott, Singleton contends that the taser video—coupled with Thompson's inability to independently recall the incident—establishes beyond dispute that the circumstances were "tense, uncertain, and rapidly evolving," and that his use of force was therefore reasonable. We disagree.

Singleton and Thompson each believe the video supports his version of how the incident transpired. They also disagree as to whether Thompson's behavior can be characterized as aggressive and confrontational such that a reasonable officer in Singleton's shoes would have believed he posed an immediate threat. Having reviewed the video, we note that it captures only part of the incident, and that it does not clearly show where Thompson's other hand was positioned when he turned to point at his house. But the video does not conclusively disprove Thompson's view of the incident. Singleton simply disagrees with "the district court's conclusions regarding evidence sufficiency and the genuineness of factual disputes—conclusions that we have no jurisdiction to review." See Thompson, 800 F.3d at 983. And, under the district court's version of the facts, Singleton's conduct constituted a violation of

Thompson's Fourth Amendment right to be free from excessive force. See Brown, 574 F.3d at 499 (holding that it was "unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call").

Next, Singleton argues that, in December 2010, it was not clearly established that he could not tase Thompson.[2] But Singleton has attempted to define Thompson's constitutional right by describing him as aggressive, confrontational, and resistant. In doing so, Singleton has construed disputed facts in his own favor, and has effectively "asked us to examine a matter over which we lack jurisdiction, *i.e.*, which facts [Thompson] may, or may not, be able to prove at trial." See Burnikel, 886 F.3d at 711 (internal quotation omitted); see also Franklin ex rel. Franklin v. Peterson, 878 F.3d 631, 638 (8th Cir. 2017) ("While we have jurisdiction to determine whether conduct the district court deemed sufficiently supported for purposes of summary judgment constitutes a violation of clearly established law, we lack jurisdiction to determine whether the evidence could support a finding that particular conduct occurred at all.").

Nevertheless, it was clearly established in December 2010 that the facts as found by the district court would give rise to a Fourth Amendment violation. "A clearly established right is one that is 'sufficiently clear that every reasonable official

---

[2]The district court did not reach the second-prong of the qualified immunity analysis, finding that it was "not in dispute in this case." This was understandable, as Singleton offered no meaningful argument in the district court as to why the constitutional right that Thompson seeks to vindicate in this case was not clearly established. Instead, in his brief in support of his motion for summary judgment, Singleton simply cited Coker for the proposition that "[t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures."

would have understood that what he is doing violates that right.'" Burnikel, 886 F.3d at 711 (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). While "clearly established law should not be defined at a high level of generality . . . it is not necessary, of course, that the very action in question has previously been held unlawful." Dean v. Searcey, No. 16-4059, 2018 WL 2770805, at *9 (8th Cir. June 11, 2018) (citations omitted) (quoting White v. Pauly, 137 S. Ct. 548, 552 (2017); Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017)). Rather, "the dispositive question is whether there was a fair and clear warning of what the Constitution requires." Id. (quoting City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1778 (2015)). As this court explained in Brown in June 2009,

> [I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of officers or the public. At the time [the officer] deployed his Taser and arrested [the suspect], the law was sufficiently clear to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call . . . .

574 F.3d at 499 (citations omitted). By December 2010, it was clearly established that intentionally tasering, without warning, an individual who has been stopped for a nonviolent misdemeanor offense and who is not resisting or fleeing arrest while his hands are visible violates that individual's Fourth Amendment right to be free from excessive force.

## III. Conclusion

Accordingly, the district court's denial of qualified immunity is affirmed.

_____